IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| **DERRICK ASHLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 5:24-cv-06173-MDH |
| | ) |
| **FRANK BISIGNANO,** Commissioner of | ) |
| the Social Security Administration**,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

Before the Court is Plaintiff Derrick Ashley's appeal of Defendant Social Security Administration Commissioner's ("Commissioner") denial of his application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff has exhausted his administrative remedies and the matter is now ripe for judicial review. After carefully reviewing the record, the Court **AFFIRMS** the ALJ decision in part and **REVERSES** and **REMANDS** in part.

## BACKGROUND

Plaintiff filed his application for a period of disability and disability insurance on April 7, 2022. (Tr. 18). Plaintiff was born on May 5, 1984, and alleged disability beginning on January 30, 2019. (Tr. 18 and 29). The ALJ found that Plaintiff had the following severe impairments: cervical degenerative disc disease; history of left upper extremity radiculopathy also diagnosed as unspecified neuralgia and neuritis; history of posttraumatic stress disorder; antisocial personality disorder; recurrent severe major depressive disorder; other specified anxiety disorder; and unspecified alcohol, cocaine, cannabis and opioid use disorder. (Tr. 20). The ALJ additionally

found that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 21). The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") for:

> Lifting, carrying, pushing or pulling 20 pounds occasionally and 10 pounds frequently. The claimant [could] stand and/or walk up to four hours in an eight-hour workday and sit up to six hours total in an eight-hour workday. The claimant could occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. The claimant could occasionally stoop and never kneel, crouch, or crawl. The claimant needed to avoid exposure to extreme cold weather, excessive vibrations, operational control of moving machinery, unprotected heights, and hazardous machinery. The claimant need[s] to avoid overhead reaching with the left upper extremity but could frequently reach in all other directions with the left upper extremity. The claimant could frequently handle and finger bilaterally. The claimant had the ability to concentrate, persist, and remain on task and pace to perform simple, routine, and repetitive tasks which may have involved multiple non-complex simple, routine and repetitive steps, tasks or instructions. The claimant could concentrate, persist and remain on task and pace to adapt to work in an environment that was free of fast paced production requirements and involved only simple, work-related decisions with not more than occasional workplace changes. The claimant could have no public interaction but could work around coworkers but with only occasional interaction with coworkers and supervisors.

(Tr. 23). The ALJ found that the Plaintiff was unable to perform any past relevant work as a delivery driver. (Tr. 28). Relying on the vocational expert testimony, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed, considering Plaintiff's age, education, work experience, and RFC. (Tr. 29). Consequently, the ALJ found Plaintiff not disabled. (Tr. 30).

## STANDARD

The Court's role in reviewing an ALJ's decision is to determine whether the "findings are supported by substantial evidence in the record as a whole." *Page v. Astrue*, 484 F.3d 1040, 1042-43 (8th Cir. 2007), *citing Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir.1999). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Id.* "The fact that some evidence may support a conclusion opposite

from that reached by the Commissioner does not alone permit our reversal of the Commissioner's decision." *Id., citing Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir.2004); *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007). If the record contains substantial evidence to support the Commissioner's decision, the Court may not reverse the decision simply because substantial evidence exists in the record that would have supported a contrary outcome. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). In other words, the Court cannot reverse simply because it would have decided the case differently. *Id., citing Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Further, the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart,* 433 F.3d 575, 578 (8th Cir. 2006).

**DISCUSSION**

Plaintiff argues four points on appeal. Plaintiff argues that the ALJ did not comply with Social Security Ruling ("SSR") 00-4p; the Vocational Expert ("VE") testimony about job incidence data does not sustain the Commissioner's burden; the Appeals Council has impeded the production of a complete administrative record; and that the Defendant committed legal errors relating to Midwest CES's Psychological Consultative Examination ("CE"). The Court will take each argument in turn.

**I.      SSR 00-4p**

At step five, the Commissioner has the burden to "identify the types of jobs [a claimant] could perform notwithstanding his disabilities" and to "ascertain whether those kinds of jobs 'existed in significant numbers in the national economy.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1)). *See also Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). "The Commissioner may rely on a vocational expert's

response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). The ALJ, however, cannot rely on testimony that conflicts or appears to conflict with information in the DOT without addressing and resolving the conflict. SSR 00-4p, 2000 WL 1898704, at *2-*4; *Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 558 (8th Cir. 2018). If the ALJ does not identify and resolve the apparent conflict, "the vocational expert's testimony is not substantial evidence to support the denial of benefits." *Stanton*, 899 F.3d at 558.

The Commissioner adopted this rule in SSR 00-4p, stating "[w]hen a [vocational expert] ... provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] ... evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. If there is an apparent conflict between the vocational expert's testimony and the DOT, the ALJ "will obtain a reasonable explanation for the apparent conflict." *Id.* The ALJ must resolve the conflict before relying on the expert's testimony in support of its determination, and must explain in the decision how the ALJ resolved the conflict. *Id.* Thus, "[w]hether the vocational expert's testimony is substantial evidence in support of the ALJ's decision depends on whether the expert's testimony appears to conflict with the DOT, and if so, whether the ALJ resolved the conflict." *Stanton*, 899 F.3d at 558.

Plaintiff argues that the VE identified three unskilled occupations, each of which requires level two reasoning. Plaintiff argues that this reasoning level requires the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and to deal with problems involving a few concrete variable in or from standardized situations. Plaintiff

asserts that this conflicts with the RFC to which the ALJ failed to recognize or resolve the conflict. Further, Plaintiff argues that the record does not establish that he could perform detailed work.

Defendant argues that Plaintiff's reliance on the job classification as reasoning level 2 in the DOT is insufficient to invalidate the VE's testimony. Defendant argues that Plaintiff's representative asked if there was a conflict, the vocation expert testified as to why the jobs could still be performed, and the ALJ credited that testimony. Thus, Defendant asserts that the ALJ satisfied SSR 00-4p, and remand is not required even if Plaintiff, or the Court, would have resolved the issue differently.

The DOT includes a "reasoning level" between one and six for each listed job, and includes the following definitions for reasoning levels one through three:

> 01 Level Reasoning Development
>
> Applying commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variable in or from these situations encountered on the job.
>
> 02 Level Reasoning Development
>
> Applying commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> 03 Level Reasoning Development
>
> Applying commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

See DOT Appendix C.

The Court finds remand is warranted on this issue. During the cross-examination of the VE, Plaintiff's representative and the VE had the following exchange:

> Atty: I was asking for the GED code for the jobs that [the VE] identified that [Ashley] could do with the limitations that the Judge had set forth.

> VE: What kind of code?
>
> Atty: It's – I want to make sure. Do you have a GED reasoning scale code?
>
> VE: The – are you talking about reasoning?
>
> Atty: Yes.
>
> VE: Yeah, that'll take just a little while. Let's see. The – well, just – I'll have to look them up. Just one second. The office helper has a reasoning of two. The verification clerk has a reasoning level of two, and the routing clerk has a reasoning level of two.
>
> Atty: And so that reasoning level requires that a person be able to handle detailed instructions?
>
> VE: No.
>
> Atty: No? I thought that reasoning level of two required the ability to carry out detailed but uninvolved instructions?
>
> VE: Well, I'm – you're looking at the definition, and I agree. It says apply commons sense understanding to carry out detailed but uninvolved written or oral instructions. I don't consider – *I consider from a vocational standpoint detailed instructions to be above the SVP 2 level*.
>
> Atty: Okay. But these jobs would require the ability to carry out detailed but uninvolved instructions? Am I understanding that?
>
> VE: Well, yeah, by applying common sense understanding.

(Tr. 79–80) (emphasis added).[1] The ALJ then proceeded to ask the VE if their testimony has been consistent with the DOT and its companion publication to which the VE responded "[i]t has". (Tr. 80). In the ALJ's decision, she stated:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements or representative light unskilled (SVP 2) occupations such as an office helper (DOT # 239.567-010 and 260,000 jobs nationally); verification clerk (DOT # 222.687-010 and 64,000 jobs nationally); and routing clerk (DOT # 222.687-022 and 220,000 jobs nationally). Pursuant to SSR

---

[1] The VE stated that "I consider from a vocational standpoint detailed instruction to be above the SVP 2 level." As the transcript in the record demonstrates the representative and VE were talking about GED reasoning scale code, the Court will interpret the VE to have meant a GED reasoning level of 2 rather than an SVP level of 2.

6

00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles and Selected Characteristics of Occupations. … Furthermore, the claimant's representative did not object to the qualifications of the vocational expert or to the testimony provided at the administrative hearing.

(Tr. 30). Here, the record shows that the VE originally did not believe that a reasoning level of 2 requires that a person be able to handle detailed instructions and then, after further inquiry, stated that "I consider from a vocational standpoint detailed instructions to be above the SVP 2 level." (Tr. 79–80). The testimony from the VE raises an apparent unresolved conflict between the VE and DOT. Although the ALJ judge stated that the VE's testimony is consistent with the information contained in the DOT, the Court finds there was not substantial evidence in the record to support the ALJ's determination on this point. The ALJ did not provide a reasonable explanation for the conflict before relying on the VE's testimony within her decision. In sum, because the ALJ did not recognize or resolve the inconsistency between the VE's testimony and the DOT with respect to whether level 2 reasoning development requires detailed but uninvolved instructions and if Plaintiff would be suited to those roles based on the RFC, the Court orders remand on this issue.

## II. The VE's Testimony Regarding Job Incidence Data

Plaintiff next argues that the VE's testimony about the availability of jobs directly conflicts with the Bureau of Labor Statistics ("BLS") data and does not support the Commissioner's burden.[2] Plaintiff argues that the VE stated that work as an office helper has approximately 260,000 positions nationwide, work as a verification clerk has approximately 64,000 positions nationwide, and work as a routing clerk as approximately 220,000 positions nationwide. In contrast, Plaintiff states that the BLS data shows the Standard Occupation Classification ("SOC") groupings showing work as couriers & messengers, which encompasses officer helper, had 47,754

---

[2] The BLS collects data by occupation by SOC groupings. The SOC system is a federal statistical standard used by agencies to classify workers. See https://www.bls.gov/soc/.

7

jobs nationwide;[3] weighers, measurers, checkers, samplers & recordkeeping, which encompasses verification clerk, had 44,719 jobs nationwide;[4] and shipping, receiving, & inventory clerks, which encompasses routing clerk, had 844,120 jobs nationwide.[5] Plaintiff asserts that the VE's testimony is implausible for the office helper and verification clerk roles. Plaintiff argues that the VE's testimony about the office helper and verification clerk jobs is not substantial evidence and cannot support the Commissioner's burden at step five.

Defendant argues that the agency's regulations do not mandate a precise count of job numbers and VEs are not expected to formulate opinions with more confidence than imperfect data allows. Defendant states that the VE had been vetted and approved as a qualified expert with the knowledge, education, and experience required to testify and that Plaintiff's representative did not object to the VE giving her testimony. Defendant further argues that the VE affirmatively stated that she did not use a computer software or job browser pro, or anything of that nature to derive the numbers but instead used the information from the BLS. Defendant argues that even if the Court accepted Plaintiff's challenge to the job numbers of office helper and verification clerk, a significant number of jobs would remain.

The disability determination is made after the ALJ goes through a five-step sequential analysis. At step five, if the claimant cannot perform past relevant work, "the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform." *Wilson v. Berryhill*, No. 417CV00389MDHSSA, 2018 WL 3345297, at *2 (W.D. Mo. July 9, 2018) (quoting *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998).

---

[3] This SOC group had seven DOTs, including office helper, within the SOC group.
[4] This SOC group had thirty-three DOTs, including verification clerk, within the SOC group.
[5] This SOC group had twenty DOTs, including routing clerk, within the SOC group.

Here, the court finds the discrepancy in the VE's testimony regarding the availably of jobs in the national economy that Plaintiff can perform was a harmless error. To show an error was not harmless, the Plaintiff must provide some indication that the ALJ would have decided differently if the error had not occurred. *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012); *see also Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) ("There is no indication that the ALJ would have decided differently … and any error by the ALJ was therefore harmless."). Plaintiff has failed to show any indication that but for the error, the ALJ would have decided differently regarding Plaintiff's disability determination. The Plaintiff argues that the ALJ made no finding that, in the absence of the office helper and verification checker jobs, the routing clerk job existed in significant numbers. This argument alone is not enough to show but for the error, the ALJ would have decided differently. Further, Plaintiff shows that jobs exist within the national economy. While the numbers do differentiate significantly, Plaintiff's data confirms that there exist jobs within the national economy that would support the VE's finding. For these reasons, the Court finds that the discrepancy in the VE's testimony was a harmless error and that substantial evidence exists in the record to support the ALJ's decision.

**III.    Complete Administrative Record**

Plaintiff argues that the Appeals Council has impeded the production of a complete administrative record. Plaintiff states that his claim contains a physical CE report from the Commissioner's vendor, Midwest CES. Plaintiff asserts that the report bore the name of moonlighting nurse practitioner Amanda Cavolvic, FNP-C. Plaintiff further states that after the ALJ's denial, Plaintiff submitted evidence supporting allegations of fraud or similar fault in a CE that did not serve its purpose. Plaintiff states he specifically asked for the documents to be exhibited, to which the Appeals Counsil failed to exhibit documents material to the integrity of the

CE, stating that the evidence relates solely to the adjudication of another person whose claim is not properly before the Appeals Council. Plaintiff argues this is mistaken and evades judicial review warranting remand with instructions to evaluate the evidence.

Defendant argues that the Appeals Council associated Plaintiff's briefs with the record, but did not associate any of the supporting information attached to the briefs because it related solely to the adjudication of another person whose claims were not before the Appeals Council and thus was not evidence as defined by the agency. Defendant states that the Appeals Council explicitly stated that Plaintiff had failed to present any evidence that related to the adjudication of his claim.

20 C.F.R. § 404.976 governs the procedure before the Appeals Council. 20 C.F.R. § 404.976(b) details the evidence the Appeals Council will exhibit and states:

> The Appeals Council will evaluate all additional evidence it receives, but will only mark as an exhibit and make part of the official record additional evidence that it determines meets the requirements of § 404.970(a)(5) and (b). If we need to file a certified administrative record in Federal court, we will include in that record all additional evidence the Appeals Council received during the administrative review process, including additional evidence that the Appeals Council received but did not exhibit or make part of the official record.

20 C.F.R. § 404.1513 governs the categories of evidence used in determining disability. This regulation states "evidence is anything you or anyone else submits to us or that we obtain *that relates to your claim*." 20 C.F.R. § 404.1513(a) (emphasis added).

Here, Plaintiff has provided a summary of excluded evidence he has attached to his Brief detailing what he submitted to the Appeals Council. (Doc. 9-2). The summary provides 19 documents ranging from declarations and depositions from nine different Midwest CES physicians, deposition testimony from Midwest CES owner Jacob Johnsen and other reports, pleadings, and affidavits regarding Midwest CES. *Id*. The record shows that the Appeals Council reviewed the information submitted by Plaintiff and declined to associate it with his file because

10

"it relates solely to the adjudication of another person whose claim is not properly before the Appeals Court." (Tr. 1). The Court agrees. While Plaintiff has provided evidence regarding issues with Midwest CES, nothing submitted had anything to do with Plaintiff's specific case nor Ms. Cavlovich, the examiner who performed Plaintiff's CE. Pursuant to 20 C.F.R. § 404.1513(a) evidence is anything that is submitted or obtained by the Appeals Council that relates to Plaintiff's claim. While Plaintiff attempts to tie these deficiencies to his claim, he has failed to show any discrepancies that directly affected his CE or those done by Ms. Cavlovich. For these reasons, the Court finds that Appeals Court did not err in excluding Plaintiff's evidence and that there was substantial evidence to support the ALJ's decision.

## IV. Midwest CES's PCE

Plaintiff argues that the Commissioner committed legal errors related to the Midwest CES's CE. Specifically, Plaintiff argues that the Appeals Council failed to address allegations of fraud or similar fault and that the CE did not satisfy its purpose. The Court will take each of these arguments in turn.

### A. Allegations of Fraud or Similar Fault

Plaintiff argues that the Appeals Council failed to address allegations of fraud or similar fault. Plaintiff states he specifically alleged fraud or similar fault, describing various Midwest CES practices, including the assembly of CE reports that were not seen or authorized by the examiner. Plaintiff states that he submitted statements and testimony from Midwest CES examiners that indicated that the examiners contributed only to a portion of the report before Midwest CES submitted them to Defendant. These reports would then be affixed with an image of the examiner's signature to the report in contravention to 20 C.F.R. § 404.1519n(e). Plaintiff argues that the Appeals Council did not address the allegations of fraud or similar fault and did not evaluate

11

Case 5:24-cv-06173-MDH    Document 16    Filed 03/12/26    Page 11 of 15

whether the CE involved fraud or similar fault such that it must be disregarded under the Commissioner's directives.

Defendant argues that Plaintiff has provided no evidence that Ms. Cavlovich had an intent to defraud or that she knowingly made or concealed an incorrect or incomplete statement about a material fact. Defendant further argues that even if Plaintiff had made such a showing it would not be to his benefit as the CE report had probative findings to support the restrictions in the RFC. Defendant states that if the report were excluded, the ALJ would be required to assess Plaintiff's RFC based on the remaining evidence during the relevant period between January 2021 and December 2022, and there would be less evidence on which to base restrictions. Defendant states that the inclusion of the Midwest CE report benefited Plaintiff and its exclusion would not change the outcome of the ALJ's decision.

The Social Security Administration ("SSA") is required to "disregard evidence if there is reason to believe that fraud or similar fault was involved in the providing of evidence. *Soc. Sec. Ruling 22-2p; Titles II & Xvi: Evaluation of Claims Involving the Issue of Similar Fault in the Providing of Evidence*, SSR 22-2P (S.S.A. May 17, 2022). The SSA must disregard evidence due to similar fault "if there is reason to believe, meaning reasonable grounds to suspect, that the person knew the evidence provided was false or incomplete or that the information that was material to the determination was knowingly concealed." *Id*. "Even if [the SSA] disregard evidence, [the SSA] will evaluate the remaining evidence of record and determine whether that evidence supports a finding of entitlement to benefits or eligibility for payments. *Id*

The Court finds that there was substantial evidence to support the ALJ's determination. As discussed earlier, the Appeals Council reviewed the submission from Plaintiff and found that Plaintiff's evidence related solely to the adjudication of another person whose claims were not

12

before the Appeals Council and thus was not evidence as defined by the agency. Plaintiff has not shown there is reason to believe that fraud or similar fault was involved in the providing of evidence with his case. Further, even if Plaintiff did meet this burden, there is substantial evidence in the record that would support the ALJ's decision. For this reason the Court finds the Appeals Council did not err regarding Plaintiff's allegations of fraud or similar fault.

### B. The CE's Purpose

Plaintiff argues that the CE did not satisfy its purpose. Plaintiff argues that MS. Cavlovich's CV does not appear in the record and there is not substantial evidence that she was properly trained, nor did she have a good understanding of the programs and requirements. Further, Plaintiff argues that the CE findings specific to Plaintiff were often abnormal. Specifically, Plaintiff states that Ms. Cavlovich's diagnoses were genal categories based on symptoms and that the CE did not contain an opinion with work-related limitations.[6] Additionally, Plaintiff argues that the state agency's pre-authorized medical file ("PAMF") relied in part on the CE. Plaintiff asserts that the ALJ found these PAMF persuasive even though the CE did not adequately inform the PAMF or the ALJ about Plaintiff's limitations and thus the CE did not serve its purpose.

Defendant argues that the purpose of the CE was to give Plaintiff another opportunity to get medical evidence to support his claim and that goal was accomplished as the ALJ used positive findings from the exam to support reducing Plaintiff's RFC to a range of light work with additional exertional, postural, manipulative, environmental, and mental restrictions. Defendant also argues that Plaintiff has made no showing that Ms. Cavlovich did not meet the agency's requirements for consultative examiners and that none of the tests performed by Ms. Cavlovich would require specialized training beyond what is learned in her training and education as a certified family nurse

---

[6] Plaintiff does concede that the ALJ recognized that the CE lacked an opinion. (Tr. 28).

practitioner. Lastly, Defendant argues that state agency doctors based their findings on the record as whole and did not assess restrictions beyond what the ALJ included in the RFC, and did not cite the mental status examination findings in the Midwest CES report.

20 C.F.R. § 404.1519g governs the selection of who performs a CE. The regulation states:

> The medial source must be currently licensed in the State and have the training and experience to perform the type of examination or test we will request; the medical source must not be barred from participation in our programs under the provisions of § 404.1503a. The medical source must also have the equipment required to provide an adequate assessment and record of the existence and level of severity of your alleged impairments.

20 C.F.R. § 404.1519g(b).

Here, Ms. Cavlovich signed the CE as a FNP-C indicating she has received a family nurse practitioner certification. While no CV is attached, this certification is sufficient to show that Ms. Cavlovich was qualified to perform a CE. (Tr. 1115). Further, the results of the CE showed a diagnosis of (1) unsteadiness on feet; (2) left side numbness; (3) generalized body pain; (4) right arm numbness; (5) left-sided weakness; and (6) limited range of motion of cervical spine. *Id*. As discussed earlier, Plaintiff has failed to show any deficiencies with his specific CE and that his findings concerning Midwest's practices were not relied on by the Appeals Council nor the ALJ. Additionally, the results of the CE show support for the RFC the ALJ formulated, along with the record as a whole. For these reasons, the Court finds that the CE satisfied its purpose and that there is substantial evidence in the record to support the ALJ's determination regarding the RFC.

## CONCLUSION

With respect to the Appeals Council exclusion of evidence from Plaintiff's file and the allegations of fraud and similar fault, the Court finds there was no error. Further, to the ALJ's reliance on the VE regarding the number of jobs in the national economy, the Court finds this to be a harmless error. Regarding the CE's purpose, the Court finds there is substantial evidence in

14

Case 5:24-cv-06173-MDH    Document 16    Filed 03/12/26    Page 14 of 15

the record to support the ALJ's findings. As such, the Court **AFFIRMS** the decision with respect to those findings.

With respect to SSR 00-4p and the ALJ's reliance on the VE's testimony that detailed instructions are above level 2 reasoning, the Court finds that the ALJ erred and the ALJ's decision that Plaintiff can perform "other work" under step five is hereby **REVERSED** and **REMANDED**.

**IT IS SO ORDERED.**

DATED: March 12, 2026

 */s/ Douglas Harpool*  
**DOUGLAS HARPOOL**  
**UNITED STATES DISTRICT JUDGE**